UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH ANTWAN ARTIS,

    Plaintiff,

v.

MATTHEW BORDIN, ANTONIO MELVIN, WILLIAM POLAND, RUSSELL WAHOLA, and TIFFANI KISOR,[1]

    Defendants.
_____/

Case No. 4:22-cv-11718
District Judge F. Kay Behm
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION TO DISMISS AND SUMMARY JUDGMENT (ECF No. 23) AND DISMISS THE CASE WITHOUT PREJUDICE[2]

### I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Kenneth Antwan Artis (Artis), proceeding *pro se*, is suing defendants Matthew Bordin (Bordin), Antonio Melvin (Melvin), William Poland (Poland), Russell Wahola

---

[1] Using defendants' full names and proper spelling as reflected in their motion.

[2] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

(Wahola), and Tiffani Kisor (Kisor), who are all employed by the Michigan Department of Corrections (MDOC). Artis claims that during his incarceration at the Charles E. Egler Reception and Guidance Center (RGC) and the G. Robert Cotton Correctional Facility (JCF),[3] defendants violated his rights under the Eighth Amendment by failing to protect him, using excessive force, and denying him proper medical accommodations. *See* ECF No. 1. Under 28 U.S.C. § 636(b)(1), all pretrial matters have been referred to the undersigned. (ECF Nos. 13, 22).

Before the Court is defendants' motion to dismiss for failure to state a claim and motion for summary judgment on the grounds of exhaustion. (ECF No. 23). Artis was directed to file a response to the motion by March 17, 2023. (ECF No. 24). That date has passed without the filing of a response.

For the reasons that follow, the undersigned RECOMMENDS that the motion be GRANTED on the grounds of exhaustion and that Artis' claims against all defendants be DISMISSED WITHOUT PREJUDICE.

II. Background

Artis signed and dated the complaint on July 18, 2022, and it was received for filing on July 26, 2022. (ECF No. 1). As defendants correctly note in their motion, Artis' claims arise out of three unrelated incidents while he was housed at

---

[3] According to the Michigan Offender Tracking Information System, Artis was released on parole on August 16, 2022, shortly after he filed the complaint in this case. Indeed, the docket sheet shows a residential address for Artis.

RGC and then JCF:

> 1. <u>Failure to protect</u>: On February 6 and 9, 2022, [at RGC,] Lt. Matthew Bordin and Inspector Russell Wahola, respectively, denied his request for protective custody from staff; instead of providing protective custody, Inspector Wahola transferred him to JCF on February 18, 2022, and he was attacked the next day while he slept in his cell (ECF No. 1, PageID.5–6, 8–10). [On February 19, 2022, Kisor failed to protect him from an inmate.]
>
> 2. <u>Excessive force & denial of [medical] accommodations</u>: During a mental health incident on March 19, 2022, Sgt. Antonio Melvin handcuffed him, removed him from his cell without his medically necessary shoes (necessary because his right leg was shorter than his left), pushed him against the wall which caused him to fall, and refused to get his shoes (*id.*); and,
>
> 3. <u>Denial of medical accommodations</u>: On March 21, 2022, although he had a medical detail for a shower cage or chair, CO William Poland told him the housing unit did not have one and asked him to talk to Assistant Deputy Warden (ADW) Tiffani Kisor and a non-defendant housing unit staff (*id.*).

(ECF No. 23, PageID.78).

Defendants submitted Artis' Step III Grievance Report, (ECF No. 23-3), with their motion. This report shows that Artis filed 13 Step III grievances at RGC or JCF after February 1, 2022. The 13 grievances are set forth in a chart in defendants' motion, which includes the grievance number,[4] defendants named at Step I, the issue(s) grieved, and the grievance outcome. (ECF No. 23, PageID.79-

---

[4] The grievance identifier consists of the facility's three-letter abbreviation, the year of the grievance's filing, the month of the grievance's filing, a number unique to each grievance, and the grievance category code; the identifier is abbreviated using the facility abbreviation and the unique number.

3

82). The chart is replicated below with minor alterations.

| Grievance No. | Def.(s) named at Step I | Issue(s) grieved at Step I | Grievance Outcome |
|---|---|---|---|
| RGC-22-02-0346-27b/28e | None | On 2-11-22, non-def. ADW K. Cargo wrongly placed him on food loaf over an incident involving feces and food containers; ADW K. Cargo ignored his requests for protection; custody staff were assaulting him in retaliation for his requests. | Step I: rejected (grieving contents of dep't policy) <br> Step II: rejected (untimely at Step II) <br> Step III: rejection aff'd |
| RGC-22-02-0353-28i/28e | None | On 2-11-22, non-def. PC Fullenmost told custody staff about his kites and PREA grievances, and did not provide help when he requested it. | Step I: rejected (failure to resolve) <br> Step II: rejected (untimely at Step II) <br> Step III: rejection aff'd |
| RGC-22-02-0347-28i/28e | None | On 2-11-2021, non-def. CO Adams took his books that he had taken out of the library. | Step I: rejected (failure to resolve) <br> Step II: rejected (untimely at Step II) <br> Step III: rejection aff'd |

4

| | | | |
|---|---|---|---|
| RGC-22-02-0349-27a/28e | None | On 2-11-22, non-def. Hr'g Investigator Demmons has "purposefully not done his job right for prisoners." | <u>Step I</u>: rejected (grieving misconduct)<br><u>Step II</u>: rejected (untimely at Step II)<br><u>Step III</u>: rejection aff'd |
| RGC-22-02-0352-27a/28e | None | On 2-8-22, RGC custody staff was improperly issuing him misconduct tickets despite his mental state precluding him from such tickets under policy. | <u>Step I</u>: rejected (grieving misconducts)<br><u>Step II</u>: rejected (untimely at Step II)<br><u>Step III</u>: rejection aff'd |
| RGC-22-02-0392-28c/28e | None | On 2-14-2022, non-def. CO Adams waited for non-def. CO Milosh to finish his lunch before moving a prisoner who locked in an adjacent cell and had tested positive for COVID-19. | <u>Step I</u>: rejected (multiple issues)<br><u>Step II</u>: rejected (untimely at Step II)<br><u>Step III</u>: rejection aff'd |
| RGC-22-02-0287-03e/28e | None | On 2-7-2022, non-def. COs retaliated against him after he filed a PREA grievance. | <u>Step I</u>: denied<br><u>Step II</u>: rejected (untimely at Step II)<br><u>Step III</u>: denied |
| RGC-22-02-0354-28c/28e | None | On 2-11-2022, non-def. CO Adams and housing staff Williams took away his keep-on-person medication and told him that they would administer the medication; he has not gotten any since. | <u>Step I</u>: rejected (multiple issues)<br><u>Step II</u>: rejected (untimely at Step II)<br><u>Step III</u>: rejection aff'd |

5

| | | | |
|---|---|---|---|
| RGC-22-02-0330-03e/28e | None | For the previous week before 2-6-2022, he was not offered cell clean-up. | Step I: denied<br>Step II: rejected (untimely at Step II)<br>Step III: denied |
| RGC-22-02-0290-03e/28e | None | On 2-6-2022, when he was moved to a cell that did not have working cold water, the CO told him "have fun drinking toilet water." | Step I: denied<br>Step II: rejected (untimely at Step II)<br>Step III: denied |
| RGC-22-02-0350-28e | None | Since he transferred to the facility on 12-29-2021 until 2-13-2022, he had not received orientation. | Step I: rejected (untimely at Step I)<br>Step II: rejected (untimely at Step II)<br>Step III: rejection aff'd |
| RGC-22-02-0351-28c/28e | None | On 2-11-2022, non-def. CO denied his request for a shift supervisor so he could speak to a mental health professional; while he was waiting in a holding cell while his cell was being cleaned, staff denied his request to use the bathroom, resulting in him defecating on himself. | Step I: rejected (multiple issues)<br>Step II: rejected (untimely at Step II)<br>Step III: rejection aff'd |
| RGC-22-02-0329-17i/28e | None | Since 2-11-2022, after he had to defecate on himself, he requests for a change of clothes had been denied. | Step I: denied<br>Step II: rejected (untimely at Step II)<br>Step III: denied |

III. Artis' Failure to File a Response

6

As noted above, Artis has not filed a response to defendants' motion. The law in this Circuit is not clear on whether a failure to respond to a motion to dismiss constitutes a sufficient ground for granting the motion. In *Carver v. Bunch*, 946 F.2d 451, 453-54 (6th Cir. 1991), the Sixth Circuit held that it is an abuse of discretion for a district court to dismiss under Fed. R. Civ. P. 12(b)(6) solely because the plaintiff failed to respond to a motion to dismiss unless the failure rises to the level of a failure to prosecute. The Sixth Circuit has also held that a failure to respond to a motion to dismiss will be grounds for granting the motion. *See Scott v. State of Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision) (affirming district court's grant of the defendants' unopposed motion to dismiss and noting that "if a plaintiff fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion."); *Humphrey v. United States AG Office*, 279 F. App'x 328, 331 (6th Cir. 2008).

As to summary judgment, "[e]ven when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Byrne v. CSX Transp., Inc.*, 541 F. App'x 672, 675 (2013); *see also Delphi Auto. Sys., LLC v. United Plastics, Inc.*, 418 F. App'x 374, 380-381 (6th Cir. 2011) ("[A] district court cannot grant summary judgment in favor of

7

a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary judgment to ensure that he has discharged that burden." (quoting *Carver v. Bunch*, 946 F.2d 451, 454-455 (6th Cir. 1991))). That said, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). "The court may rely on the moving party's unrebutted recitation of the evidence in reaching a conclusion that facts are uncontroverted and that there is no genuine issue of material fact." *Jones v. Kimberly-Clark Corp.*, 238 F.3d 421 (6th Cir. 2000).

In light of the above, the undersigned will consider the merits of the motion even in the absence of a response.

### IV. Legal Standards

#### A. Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation

8

omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

9

B. Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Artis is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of

10

substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

V. Analysis[5]

A. Exhaustion of Administrative Remedies

1. Legal Standard

The Prison Litigation Reform Act (PLRA) requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006). Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted). Requiring exhaustion allows prison

---

[5] Defendants also argue that Artis' claims against Kisor should be dismissed for failure to state a claim because the complaint does not allege that Kisor was personally involved in any wrongdoing and Artis has not made out a claim for supervisor liability. It is not necessary to address this argument because, as explained *infra*, Artis clearly failed to exhaust his administrative remedies against all defendants.

11

officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

2. The Grievance Process

The MDOC has established a three-step process to review and resolve prisoner grievances. "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all those involved in the issue being grieved' in their initial grievance." *Reed-Bey v.*

12

*Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010). As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94. To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007). Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC Policy Directive 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC PD 03.02.130 ¶ S (underlining omitted).

Furthermore, MDOC Policy Directive also 03.02.130 sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within two business days of becoming aware of the issue, and then may file a Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal

13

> resolution. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022) (internal citations omitted). "Step III grievances are 'generally' responded to within sixty (60) days." *Johnson v. Burt*, No. 1:20-cv-802, 2021 WL 3476449, at *3 (W.D. Mich. June 14, 2021), *report and recommendation adopted*, 2021 WL 3473483 (W.D. Mich. Aug. 6, 2021) (citing MDOC PD 03.02.130 ¶ II). "The grievance process is exhausted once the final response is issued in Step III." *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

## B. Discussion

As set forth above, although Artis filed numerous grievances during his incarceration which he pursued through Step III, none of the grievances named any of the defendants. Nor did any of the grievances raise any of the issues that Artis brings in his complaint. Artis, by failing to file a response, has not overcome defendants' evidence in the form of Artis' Step III Grievance Report. Under these circumstances, defendants have carried their summary judgment burden to show

that there is no genuine issue of whether Artis exhausted his administrative remedies against them. He plainly did not. As such, the undersigned concludes that Artis failed to properly exhaust his administrative remedies and that his claims against defendants should be dismissed without prejudice.

VI. Conclusion

For the reasons stated above, the undersigned RECOMMENDS that defendants' motion to dismiss and for summary judgment, (ECF No. 23), be GRANTED on the grounds of exhaustion and that Artis' claims against defendants be DISMISSSED WITHOUT PREJUDICE. If this recommendation is adopted, this case will be closed.

Dated: May 12, 2023  s/Kimberly G. Altman
Detroit, Michigan  KIMBERLY G. ALTMAN
United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 12, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager